IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KURTIS TODD WIEMERS, | | |
| Plaintiff, | | **8:16CV413** |
| vs. | | |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration; | | **ORDER** |
| Defendant. | | |

Plaintiff Kurtis T. Wiemers ("Wiemers"), seeks review of the decision by the defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security disability insurance and benefits under Title II of the Act. See 42 U.S.C. § 1381. After carefully reviewing the record, the Commissioner's decision is affirmed.

## I.     PROCEDURAL BACKGROUND

Wiemers applied for Title II disability and disability insurance benefits on April 11, 2013, claiming he is unable to work due to disability beginning April 17, 2012. (Filing No. 22-2 at CM/ECF p. 19). Wiemers subsequently amended his disability onset date to March 7, 2012. (Id). Wiemers' claim was denied on July 25, 2013. Upon reconsideration, the claim was again denied on March 13, 2014. Plaintiff then filed a written request for a hearing. Administrative Law Judge ("ALJ") J. Doug Wolfe presided over a video hearing, in accordance with 20 C.F.R. 404.936(c), on March 4, 2015. Wiemers was represented by attorney Mary Kay Hansen.

ALJ Wolfe issued his written opinion on April 15, 2015, finding that Wiemers was not disabled within the meaning of the Social Security Act ("the Act"). (Id. at CM/ECF p. 16). On June 28, 2016, the Appeals Council denied Wiemers request for review. (Id. at CM/ECF p. 2). Wiemers timely appealed the Commissioner's final decision to this court on August 30, 2016. (Filing No. 1).

## II.     THE ALJ'S DECISION

The ALJ evaluated Johnson's claim through the five-step sequential evaluation process to determine whether Johnson was disabled. 20 C.F.R. §416.920(a)(4). As reflected in his decision, the ALJ made the following findings:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity during the period from his alleged onset date of March 7, 2012 through his date last insured of December 31, 2013. (20 CFR 404.1571 et seq.).

3.    Through the date last insured, claimant had the following severe impairments: degenerative lumbar disc disease status post two surgeries on disc L5, bipolar disorder, and a generalized anxiety disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). However, claimant is physically limited to performing postural activities for one-third (1/3) of an eight (8) hour work day and is mentally limited to simple unskilled work.

6. Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on August 7, 1971 and was 42 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 7, 2012, the alleged onset date, through December 31, 2013, the date last insured (20 CFR 404.1520(g)).

## III.    ISSUES RAISED FOR JUDICIAL REVIEW

Wiemers requests judicial review of the ALJ's decision. In his complaint (Filing No. 1), and his filing in opposition to Defendant's motion to affirm, (Filing No. 31), Wiemers raises the following arguments in favor of reversal:

1. Whether the Commissioner afforded appropriate weight to the treating-source opinions of Dr. Glenn and Dr. Tatay.

2. Whether the Commissioner afforded appropriate weight to the opinion of consultative examiner Dr. Meyer.

3.    Whether the Commissioner's ultimate decision was supported by substantial evidence.

IV.    THE RECORD AND PROCEEDINGS BEFORE THE ALJ

Wiemers was 42-years-old on the date he last met the insured status requirements of the Social Security Act. ([Filing No. 22-2 at CM/ECF p. 30](#)) Wiemers, a high school graduate, is able to communicate in English. He has past relevant work experience as a heavy truck driver and as a cashier. ([Id](#)). He is married but has no children or other dependents.

In early March 2012, Wiemers sought treatment for lower back pain through Thayer County Health Services. ([Filing No. 22-8 at CM/ECF p. 21](#)). He received an MRI on March 10, 2012, and based on the results, Wiemers was recommended for back surgery. On April 4, 2012, he underwent a surgical procedure consisting of a "right LS partial hemilaminectomy and removal of extruded disc." ([Id. at CM/ECF p. 63](#)). Post-surgery, Wiemers reported residual back pain to treating physician Dr. Matthew Glenn, M.D., in April, June, and August 2012. See ([Filing No. 23-4 at CM/ECF pp. 44-47](#); [Filing No. 22-8 at CM/ECF p. 16](#); [Filing No. 22-8 at CM/ECF pp. 98-99](#)). Two of the reported August 2012 back pain incidents were related to a slip-and-fall and to heavy lifting, which both caused pain at the site of his surgical incision. ([Filing No. 22-8 at CM/ECF pp. 98-99](#)). In November and December 2012, Wiemers sought emergency room care related to his lower back and underwent an additional lower back-related surgical procedure on December 19, 2012. ([Filing No. 23-2 at CM/ECF pp. 77-78](#); [Filing No. 22-8 at CM/ECF p. 53](#)).

In January and February 2013, Wiemers reported back pain and requested additional pain medication; however, he concurrently reported that his lower back

pain was "overall…getting better." ([Filing No. 22-8 at CM/ECF pp. 76-78](#)). From February 2013 through December 31, 2013, the date last insured, Wiemers reported some back pain and stiffness, including some pain as the result of a September car accident, but it was <u>not</u> documented as "acute distress." See ([Filing No. 23-2 at CM/ECF p. 42](#); [Filing No. 23-4 at CM/ECF pp. 66, 70, 76](#)).

In addition to medical problems related to lower back pain, Wiemers has reported and sought treatment for bipolar disorder, depression, generalized anxiety and mood swings. Wiemers also complains of recurrent seizures.([Filing No. 22-2 at CM/ECF p. 21](#)). Wiemers began seeing psychiatrist Dr. Rafael Tatay in September 2010, who diagnosed him as bipolar, anxious and depressed. He reported symptoms generally including anxiety, panic, helplessness, and erratic sleep. In March 2012, Wiemers reported "moderate anxiety." In April and May 2012, Wiemers described severe mood swings and anxiety, but Dr. Tatay otherwise observed that his thought processes, speech, cognitive functioning, and level of abstraction were within normal bounds on each visit. ([Filing No. 22-9 at CM/ECF pp. 38-41](#)). On May 24, 2012, Wiemers reported to his primary care provider, Dr. Glenn, that he had "minor complaints," a "good energy level," and was "sleeping well." ([Filing No. 23-4 at CM/ECF p. 42](#)). Dr. Glenn noted Wiemers' bipolar disorder, depression, and anxiety diagnoses but indicated that Wiemers was "not in acute distress." ([Id. at CM/ECF p. 44](#)). In addition, Dr. Glenn noted no acute mental distress at appointments in June, August, October and December 2012. ([Filing No. 23-4 at CM/ECF pp. 46, 50, 53, 56](#)).

Wiemers continued treatment for mental health related complaints in January, April, May, and July 2013, with the most severe symptoms reported in May. ([Filing No. 22-9 at CM/ECF p. 34](#), 55). At a May 9, 2013 appointment at the Fillmore County Medical Center, Wiemers reported "significant problems" related

to insufficient medication prescribed to treat his anxiety symptoms. ([Filing No. 23-2 at CM/ECF p. 42](#)). By July, however, Wiemers depression was noted as "present" but his anxiety was noted as "controlled." ([Filing No. 23-5 at CM/ECF p. 75](#)).

Dr. Allen Meyer, Ph.D., performed a disability evaluation of Wiemers on July 22, 2013, in connection with his application for Social Security Administration benefits. Dr. Meyer determined that Wiemers suffered from generalized anxiety. Dr. Meyer also referenced an EEG scan that indicated Wiemers suffered from recurrent grand mal seizures. But he found no signs of mania that would otherwise indicate bipolar disorder, no signs of obsessive compulsive disorder, and no paranoia. He noted that Wiemers took Serax and Seroquel medications that Wiemers found "effective." ([Filing No. 22-9 at CM/ECF pp. 2-8](#)).

Wiemers showed some indications of memory loss, but could remember three-word sequences presented to him, even when presented with a delay or distraction. ([Id. at CM/ECF p. 7](#)). Dr. Meyer noted that Wiemers was rapid and scattered in his communication style during his interview, but he could be directed back to pertinent topics. He could also understand and carry out short and simple instructions when under ordinary supervision. Dr. Meyer ultimately determined that Wiemers was not restricted in regard to the requirements of daily living, but he faced reduced scope of employment ability and would have difficulty working regular, consistent hours. ([Id. at CM/ECF p. 8](#)). His findings were based on his one-time July 2013 evaluation of Wiemers.

Dr. Tatay and Dr. Glenn provided treating source opinions in September and October 2013, respectively. ([Filing No. 22-9 at CM/ECF pp. 24-29](#); [Filing No.](#)

23-6 at CM/ECF pp. 66-69). Dr. Tatay completed a questionnaire evaluating Wiemers mental impairment, indicating that he saw and treated Wiemers in three-month increments over a span of years. Dr. Tatay noted Wiemers' bipolar disorder diagnosis. He further indicated other symptoms, including sleep disturbance, distractibility, decreased energy, and generalized persistent anxiety. He questioned Wiemers' ability to function outside of a highly supportive living environment as well as his ability to meet a "minimal increase in mental demands." (Filing No. 22-9 at CM/ECF p. 28). He opined that Wiemers would need to be absent from work more than four days per month.

In his report, Dr. Glenn indicated Wiemers suffered from seizures beginning in May 2012, and had chronic back pain, anxiety and bipolar disorder. (Filing No. 23-6 at CM/ECF p. 67). Focusing on Wiemers' physical health, Dr. Glenn opined that Wiemers could walk approximately two to three city blocks without rest or severe pain. He further opined that Wiemers could sit or stand for approximately 20 minutes at time. Dr. Glenn determined that Wiemers could stand or sit for a total of two hours each during an 8-hour work day. He also opined as to Wiemers' need for unscheduled breaks every 20 or 30 minutes and his inability to lift 50 pounds or to climb ladders.

During the video hearing held before ALJ Wolfe on March 4, 2015, Wiemers testified that he has "good days" and "bad days," with varying levels of pain and discomfort. (Filing No. 22-2 at CM/ECF p. 52). Wiemers testified that he has approximately four "good days" per each seven-day period. (Id). Wiemers indicated that his pain level can reach eight (8) or nine (9) on a ten-point scale, but is reduced to a two (2) when he regularly takes his prescribed medication. However, Wiemers testified that on a "bad day" his symptoms remain difficult to manage even when he has taken a full dosage of his medications. He states that

on a "bad day" he has difficulty walking a short distance to his kitchen and that he cannot sit for more than two hours without experiencing discomfort and the need to move. He indicated that some days, he has trouble bending or kneeling. (Id. at CM/ECF p. 54).

Wiemers also indicates that he experiences symptoms of anxiety and depression on a daily basis. He testified that he has frequent memory loss during conversation and has difficulty focusing. He says he experiences a panic attack approximately once per month. In addition, Wiemers reports experiencing grand mal seizures "once a month" or "once every two months." (Id). After experiencing a seizure, Wiemers feels the effects for up to four days. He testified that he regularly takes anti-seizure medications.[1] He further states that between grand mal seizures, he frequently experiences smaller episodes that result in memory loss.[2]

Following Wiemers' testimony, ALJ Wolfe heard the testimony of vocational expert ("VE") Stephen Kuhn. ALJ Wolfe asked the testifying VE to assume a person of Wiemers' age, education, and work experience has the following limitations:

> Assume that posturally the individual was limited to performing those activities for one-third of an eight-hour workday, and mentally assume that the individual was limited to performing the mental demands of simple unskilled work.

---

[1] In October 2013, Wiemers indicated that he was not taking any medication for his reported seizure condition. (Filing No. 22-6 at CM/ECF p. 28).

[2] Wiemers' wife, Kristi Wiemers, and his mother-in-law Deanna Jeardoe, completed separate questionnaires in October 2013 indicating that they have witnessed Wiemers seize on multiple occasions. Both testify that his seizures come with no warning and can cause confusion for several hours thereafter. See (Filing No. 22-6 at CM/ECF p. 32).

The VE testified that the hypothetical individual described could not perform any of Wiemers' past relevant work. However, the VE indicated that the hypothetical individual could perform other light, unskilled work, including "a packager, DOT number 559.685-018" (with 150,000 such jobs nationwide), or "fast food worker, DOT number 311.472-010" (with over a million such jobs nationwide).

ALJ Wolfe further inquired whether an individual of Wiemers' age, education, and relevant work experience could perform light work if afflicted by the following <u>additional</u> limitations:

> [L]imited to lifting and or carrying no more than 10 pounds for no more than one-third of an eight-hour workday…[L]imited to standing and or walking for no more than two hours out of an eight-hour workday...[L]imited to sitting for no more than two hours out of an eight-hour workday….[U]nable to climb ladders, ropes, or scaffolds and...other postural activities that would be limited to less than one-third of an eight-hour workday…[I]ndividual would miss on the average about four days [of work] per month…[M]entally…unable and on a sustained regular basis would be unable to respond appropriately to supervision, co-workers, usual work situation[s], or changes in a routine work setting.

The testifying VE indicated that an individual with the preceding limitations could neither perform Wiemers' past relevant work nor are there occupations in the national economy that the hypothetical individual could perform.

## V. ANALYSIS

Wiemers asks this court to overturn the Commissioner's decision claiming: (1) the Commissioner did not afford appropriate weight to the treating-source opinions of Dr. Glenn and Dr. Tatay; (2) the Commissioner did not afford

appropriate weight to the opinion of consultative examiner Dr. Meyer; and (3) the Commissioner's ultimate decision was not supported by substantial evidence.

## I. Failure to Provide Proper Weight to Treating Source Opinions

Wiemers first argues that the ALJ erred in assigning "little weight"[3] to the opinions of treating psychiatrist Dr. Rafael Tatay and treating physician Dr. Matthew Glenn. The ALJ determined that the treating source opinions of Drs. Tatay and Glenn were "without support from other substantial evidence in record including the medical evidence…[and] the claimant's activities." (Filing No. 22-2 at CM/ECF p. 29).

In September 2013, Dr. Tatay completed a Mental Impairment Questionnaire in connection with Wiemers' application for disability insurance benefits. Dr. Tatay noted that Wiemers suffers from bipolar disorder. He further documented signs and symptoms of mental impairment that include several mood, memory and emotional disturbances. Dr. Tatay's evaluation of Wiemers' ability to function included: a serious inability to maintain concentration, to remain punctual, or to respond appropriately to simple instructions. He opined that Wiemers is unable to meet competitive standards at all with regard to his ability to follow simple routines, to remember work procedures or to handle normal workplace stress. (Filing No. 22-9 at CM/ECF pp. 24-29).

When prompted to provide clinical findings that support the severity of Wiemers' impairments, Dr. Tatay stated that "with current medication he is doing

---

[3] In his brief, Wiemers initially argues that ALJ Wolfe assigned "no weight" to the treating source opinions of Drs. Tatay and Glenn. However, it is clear from the ALJ's decision that he afforded "little" rather than "no" weight to the treating sources. The court notes that even in light of this discrepancy, the same analysis is applicable.

fairly well, [but] still has some memory loss." (Id. at CM/ECF p. 24). Dr. Tatay was further prompted to provide "medical/clinical findings that support his assessment" of any serious limitations to Wiemers' "mental abilities and aptitudes needed to do unskilled work." In response, Dr. Tatay provided some general comments regarding memory loss, mood swings and an alleged history of alcohol abuse. (Id. at CM/ECF p. 27).

In October 2013, Dr. Matthew Glenn provided his findings and opinions in a General (Physical) Questionnaire. He notes Wiemers chronic back pain and anxiety. He further notes that Wiemers back pain was "severe" and included pain in his leg as well as "nerve decompression." (Filing No. 23-6 at CM/ECF p. 66). He indicates significant limitations in Wiemers' ability to sit or stand without experiencing severe pain, ultimately concluding that Wiemers could only stand or sit for two (2) hours during a standard 8-hour workday. He indicated lifting and movement restrictions that would disallow Wiemers from ever lifting more than 50 pounds and or climbing a ladder. He believes Wiemers would require unscheduled breaks during the workday every 20-30 minutes, lasting a duration of 5-10 minutes per break. (Id). Dr. Glenn ultimately concluded that Wiemers physical health would limit him to "low stress work." (Id. at CM/ECF p. 69).

When prompted to "identify the clinical findings and objective signs" that led to his conclusions, Dr. Glenn wrote "tender palpation lumbar," "diminished reflexes bilat[erally]," and "[decreased] ambulation [from] pain." No further written explanation was provided. (Id. at CM/ECF p. 66).

ALJ Wolfe, while acknowledging that Dr. Tatay and Dr. Glenn were treating sources, assigned "little weight" to their evaluations. The ALJ found that both treating source opinions "provided little explanation of the evidence relied on."

(Filing No. 22-2 at CM/ECF p. 29). He further determined that they were "without support" of other substantial evidence in record, including other medical evidence or Wiemers' own testimony as to his activities. (Id).

An ALJ must give "'controlling weight' to a treating physician's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting Wagner v. Astrue, 499 F.3d 842, 848–49 (8th Cir.2007)); see also 20 C.F.R. § 404.1527. A treating physician's opinion "should not ordinarily be disregarded…[.]" Miller v. Colvin, 784 F.3d 472, 477 (8th Cir. 2015). However, the opinion of a treating source may have "limited weight if it provides conclusory statements only…or is inconsistent with the record." Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007). Moreover, "[t]he ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (emphasis added).

Here, Drs. Tatay and Glenn provide little more than conclusory statements regarding both Wiemers' physical and mental health. When asked for specific "clinical findings" both treating sources reiterated their diagnoses without further elaboration. Neither cited specific incidents, specific clinical visits, or specific medical tests performed. An ALJ does not have a duty to "patch the holes in a treating physician's porous opinion nor give the opinion controlling weight...[.]" Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014). Likewise, a treating physician's opinion should not control when devoid of "clinical or diagnostic data." Id. (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989)). Thus, ALJ

Wolfe reasonably concluded that the treating source opinions of Drs. Tatay and Glenn were afforded little weight.

Even assuming Drs. Tatay and Glenn provided more than mere conclusions in their Questionnaires, those opinions may still be properly discounted if "inconsistent with the record." Samons, 497 F.3d at 818. As such, ALJ Wolfe found these opinions "less persuasive" based on a lack of support "from other substantial evidence in the record." (Filing No. 22-2 at CM/ECF p. 29).

From his disability onset date through his date last insured, Wiemers consistently sought treatment for chronic lower back pain, which included two surgical procedures and emergency room visits in November and December 2012. (Filing No. 23-2 at CM/ECF pp. 77-78; Filing No. 22-8 at CM/ECF p. 53). Wiemers did, however, report as to the effectiveness of his medication and indicated that his back pain was "overall…getting better" in February 2013. (Filing No. 22-8 at CM/ECF at p. 76). At his hearing before ALJ Wolfe, Wiemers testified that he has good and bad days, with approximately four good days per week. He indicated that on a good day, he can accompany his wife to the grocery store, care for their dog, and do light work around the house, including small loads of laundry and dishes. (Filing No. 22-2 at CM/ECF at pp. 52, 56, 69). On bad days, he has trouble sitting for prolonged periods and walking more than a short distance. He indicated that on good days, which he implied outnumber the bad, his medication is effective at alleviating his lower back pain. (Id. at CM/ECF p. 53).

Wiemers also complained on multiple occasions of anxiety, panic, mood swings and depression. Dr. Tatay, while recording Wiemers' reported symptoms,

found that his thought processes, speech, cognitive functioning, and level of abstraction were within normal bounds at multiple appointments. (Filing No. 22-9 at pp. 38-41). Also on multiple occasions, Dr. Tatay noted that Wiemers medication was "effective" or "working well." (Id). In July 2013, he further noted that Wiemers' anxiety was "controlled." At appointments with Dr. Glenn in May, June, August, and December 2012, Wiemers was noted as "not in acute distress." (Filing No. 23-4 at CM/ECF pp. 46, 50, 53, 56). Wiemers did indicate at his hearing that he experiences symptoms of anxiety and depression daily. He stated that he has recurrent panic attacks approximately once per month and suffers from grand mal seizures "once a month" or "once every two months." (Filing No. 22-2 at CM/ECF p. 61).

The ALJ thoroughly weighed the record and determined that the opinions of Dr. Tatay and Dr. Glenn were inconsistent when viewed in light of other substantial evidence in the record, including their own previous medical evaluations and Wiemers' own testimony. "'Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). Here, a reasonable mind could conclude that the record was inconsistent with the treating source opinions of Drs. Tatay and Glenn. Moreover, the court "will not reverse the decision merely because substantial evidence would have also supported a contrary outcome." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010).

In sum, ALJ did not err in affording little weight to the treating source opinions based either on their conclusory nature or their inconsistency with substantial evidence in the record as a whole.

## II.   Failure to Provide Proper Weight to Opinion of Consultative Examiner

Wiemers next argues that the opinion of consultative examiner Dr. Allen Meyer should have been afforded more than "some weight." Wiemers asserts that the ALJ erred in determining that Dr. Meyer's opinion was "without support from other substantial evidence in record." (Filing No. 22-2 at CM/ECF p. 28).

Dr. Meyer conducted his one-time examination of Wiemers on July 22, 2013. (Filing No. 22-9 at CM/ECF p. 2). Dr. Meyer determined that Wiemers suffered from generalized anxiety and recurrent grand mal seizures. Dr. Meyer's report indicates that Wiemers found his prescribed seizure and anxiety medications "effective." Dr. Meyer noted some indications of memory loss as well as Wiemers' rapid and scattered communication style. (Id. at CM/ECF at p. 5). He reported that Wiemers could remember three-word sequences and could carry out short and simple instructions when under ordinary supervision. He ultimately determined, however, that Wiemers faced reduced scope of employment and would have difficulty working regular, consistent hours. (Id).

"[T]he results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision . . . [.]" Cox v. Barnhart, 345 F.3d 606 (8th Cir. 2003). In assigning weight to the opinion of a non-treating examiner, the ALJ should consider the nature of the treatment relationship, the length of treatment, the supporting evidence, the consistency with the record as a whole, and whether the physician was practicing in his or her specialty. See 20 C.F.R. § 416.927(c)(1–6). Here, the ALJ determined that Dr. Meyer's opinion should be afforded some weight. ALJ Wolfe noted that Dr. Meyer only interacted with Wiemers on one occasion and that his analysis was overall

inconsistent with substantial evidence in the record. ([Filing No. 22-2 at CM/ECF p. 28](#)).

Wiemers takes issue with ALJ Wolfe's decision to afford more weight to the opinion of a consultative examiner than to those of treating source physicians. Wiemers argues that the treating source opinions should have been given controlling weight but that Dr. Meyer's opinion, in turn, should have been afforded more than just "some weight." ([Id](#)).

The Eighth Circuit has recognized an ALJ's ability to afford more weight to a non-treating source's opinions when the opinion of a treating source has been found inconsistent with the record. [Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006)](#) ("[h]aving determined that [treating source] opinions were inconsistent with substantial evidence in the record, the ALJ was clearly authorized to consider the opinions of other physicians"). As explained, supra, the court finds no error in the ALJ's decision to assign little weight to the opinions of treating sources Drs. Tatay and Glenn based on inconsistency with substantial evidence in the record. Thus, the court finds no error in assigning more weight to a non-treating source.

An ALJ may also appropriately afford "some weight where it was warranted, and discount[ ] it when it was contradicted by a lack of evidence or was undermined by contrary evidence…[.]" [Aquiniga v. Colvin, 833 F.3d 896, 902 (8th Cir. 2016).](#) Even when lacking in specificity as to which pieces of evidence were discounted, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." [Vance v. Berryhill, 860 F.3d 1114, 1118 (8th Cir. 2017);](#) see also [Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)](#) (finding that

ALJ "is not required to discuss every piece of evidence submitted," and his "failure to cite specific evidence [in the decision] does not indicate that such evidence was not considered").

Here, the ALJ properly took into account Dr. Meyer's limited treatment history of Wiemers and also reasonably determined that Meyer's opinion was not supported by substantial evidence. ALJ Wolfe evaluated Meyer's opinion in light of other medical evidence as well as Wiemers' testimony regarding his limitations and daily activities. As such, a "reasonable mind would accept as adequate" the ALJ's conclusion. Smith, 435 F.3d at 930.

For the foregoing reasons, ALJ Wolfe did not error in affording "some weight" to the portions of Dr. Meyer's testimony that he found consistent and persuasive with the substantial evidence in the record.

III.    Failure to Find Substantial Evidence on the Record as a Whole

Finally, Wiemers argues throughout his brief that even if the treating and non-treating sources in the record were afforded appropriate weight, substantial evidence still warranted a finding of disability on the record as a whole.

"A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole." Schultz v. Astrue, 479 F.3d 979, 982 (8th Cir. 2007) (citing Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001)). If substantial evidence on the record as a whole supports the decision, it must be affirmed. Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006) (emphasis added). As discussed above, "'[s]ubstantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion.'" Smith, 435 F.3d at 930 (quoting

*Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "The ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). The court should not overturn an ALJ's decision so long as it is in the "zone of choice" even if the court disagrees with the ALJ's conclusion. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

ALJ Wolfe determined that Wiemers had the following severe impairments: degenerative lumbar disc disease status post two surgeries on disc L5, bipolar disorder, and a generalized anxiety disorder. He found that even given his severe impairments, Wiemers "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Filing No. 22-2 at CM/ECF p. 23).

Wiemers argues that the ALJ erred in failing to categorize his alleged seizure condition as a severe impairment. He seems to implicitly argue that doing so would have created a combination of impairments that would have met an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). ALJ Wolfe indicated that he reviewed the record and did not find substantial evidence on the record as a whole that Wiemers' seizure condition was as severe as reported. ALJ Wolfe points to discrepancies as to whether Wiemers was taking anti-seizure medication, a failure to seek emergency treatment for his seizure condition, and Wiemers' credibility as a witness. (Filing No. 22-2 at CM/ECF p. 22). The ALJ weighed the opinion evidence of Wiemers' wife and mother-in-law but found that their opinions were overall inconsistent with the record. (Id). The ALJ stated that, while Wiemers testified at his hearing to the severity of his seizure condition, there was "essentially nothing in the record to suggest that the claimant made such

profound complaints to any of his medical providers on a frequent consistent basis during the relevant time period." (Id). The ALJ's conclusion is consistent with the record.

Wiemers did keep a log of seizure activity that he points to as corroborative of his testimony. (Filing No. 22-6 at CM/ECF pp. 45-63). But, the recorded activity falls mostly outside the relevant period—i.e. the alleged onset date through the date last insured. "Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (quoting Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir.1998)). However, "evidence [from outside the relevant period] is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition." Moore v. Astrue, 572 F.3d 520, 522 (8th Cir.2009) (internal citation omitted).

In his evaluation of the record, the ALJ did not rely on the seizure log as indicative of Wiemers' condition during the relevant period. It is reasonable that the ALJ viewed the evidence, along with medical records outside the relevant period, as a "subsequent deterioration" of Wiemers' condition. Id. Thus, his contention that the ALJ erroneously disregarded this information is without merit.

The ALJ ultimately determined that Wiemers has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b), to performing postural activities for one-third (1/3) of an eight (8) hour work day, and was limited mentally to simple unskilled work. (Filing No. 22-2 at CM/ECF p. 24).

There is substantial evidence in the record as a whole to support the ALJ's conclusion as to Wiemers' impairments and his RFC. As discussed, supra, the ALJ did not err in assigning "little" and "some" weight to the treating and non-treating sources, respectively. Yet, he found that substantial evidence in the record supported a finding of severe impairments both physically to his lower back and mentally in the form of anxiety and bipolar disorder—all of which find support in the treating and non-treating source opinions. However, the ALJ found that substantial evidence, both in the form of medical and testimonial evidence, undercut the austere work restrictions opined to in the medical opinions.

The ALJ also found Wiemers' testimony as to the severity of his conditions "not entirely credible." (Filing No. 22-2 at CM/ECF p. 26). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). The ALJ explained his credibility findings and those findings were supported by the record. The court finds no error in the ALJ's credibility determination.

In sum, the ALJ weighed the record in its entirety and determined that Wiemers was not disabled within the meaning of the Act. The ALJ's decision was within the "zone of choice" when viewed in light of substantial evidence on the record as a whole. Buckner, 646 F.3d at 556.

For all the foregoing reasons,

IT IS ORDERED that upon review of the record as a whole, substantial evidence supports the ALJ's decision, and

1)     The government's motion to affirm the decision of the Commissioner of the Social Security Administration, (Filing No. 32), is granted.

2)     Judgment in accordance with this memorandum and order will be entered by separate document.

Dated 22nd day of December, 2017.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge